**REVISED OCTOBER 22, 2019**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20254

United States Court of Appeals
Fifth Circuit

**FILED**
October 21, 2019

Lyle W. Cayce
Clerk

In re: Evan Brian Crocker, also known as Haas Legal, P.L.L.C.

      Debtor

EVAN BRIAN CROCKER, on behalf of themselves and all those similarly situated, also known as Haas Legal, P.L.L.C, formerly known as Evan Brian Haas: MICHAEL SHAHBAZI, on behalf of themselves and all those similarly situated, formerly known as Montana Shahbazi; WENDY L. LANDES, on behalf of themselves and all those similarly situated; RAEGENA SEITZ-MOULDS, on behalf of themselves and all those similarly situated,

      Appellees

v.

NAVIENT SOLUTIONS, L.L.C.; NAVIENT CREDIT FINANCE CORPORATION,

      Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, SOUTHWICK and ENGELHARDT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

An individual in Texas and another in Virginia separately obtained loans from the same lender to pay education expenses. Both later filed for bankruptcy in their respective states. In time, orders of discharge were entered. One of the discharged debtors then filed suit against the lender in the same Bankruptcy Court of the Southern District of Texas that had ordered the discharge of his debts. Later, the Virginia debtor joined the Texas suit. The suit seeks to certify a nationwide class of those who claim their education-loan debts were validly discharged but from whom this lender continues to demand payment. A declaratory judgment, injunction, and damages are sought.

The lender filed a motion for summary judgment, arguing bankruptcy courts cannot enforce the injunctions arising from discharge orders entered by courts in other judicial districts, and these private-education-loan debts are statutorily excepted from discharge. The bankruptcy court held the opposite as to both, then certified the two holdings for interlocutory appeal.

We conclude that a bankruptcy court does not have authority to enforce the discharge injunctions entered in other districts. On the other hand, we agree with the bankruptcy court that the particular education loans involved here are not statutorily excepted from discharge. The cause is REMANDED.

FACTUAL AND PROCEDURAL HISTORY

In 2009, Evan Crocker[1] obtained a $15,000 loan to fund his bar examination preparation. The lender was a subsidiary of SLM Corporation, d/b/a Sallie Mae, which is a for-profit, public corporation whose loans are not part of any governmental loan program. The loan documents informed Crocker that his repayment obligation "may not be dischargeable in bankruptcy." Crocker's loan was transferred to SLM Education Credit Finance Corporation,

---

[1] Evan Brian Haas changed his name to Evan Brian Crocker in 2017. We use his current name throughout this opinion.

No. 18-20254

which subsequently became Navient Credit Finance Corporation. In the complaint, Navient Solutions is said to be the entity pursuing collection. We will not differentiate among Navient entities in our discussion.

In 2015, Crocker filed for voluntary Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. He scheduled his bar-study loan claim as an "Educational . . . Private loan" and did not dispute the debt. In February 2016, the court granted him a discharge under 11 U.S.C. § 727, informed him that "[m]ost debts are covered by the discharge, but not all," and closed his case.

Michael Shahbazi has a similar story. In 2002, Shahbazi obtained an $11,658.99 loan from Sallie Mae for tuition and expenses while he attended a technical school. He was given notice that his loan was "an education loan that must be repaid." Exactly how Navient obtained its interest is unclear to us, but it is servicing this loan.

In 2011, Shahbazi filed for voluntary Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. He scheduled his Sallie Mae loan as a "Student Loan" and did not dispute the debt. In December 2011, the court granted him a discharge and closed his bankruptcy proceeding. This discharge order specifically listed "Debts for most student loans" as not being discharged.

It is alleged that after both discharges, Navient had both of these plaintiffs contacted frequently by telephone and email to demand repayment. In August 2016, Crocker filed an adversary proceeding against Navient in the Bankruptcy Court for the Southern District of Texas, the same court that had granted him a discharge. He sought (1) a declaratory judgment that his private education debt had been discharged; (2) entry of judgment holding Navient in contempt for violating the injunction arising from his discharge; and (3) a

3

No. 18-20254

temporary injunction. The court entered an agreed preliminary injunction on August 18, 2016, barring Navient from pursuing collection until further order.

Crocker, with Shahbazi as an additional plaintiff, filed an amended complaint, seeking to certify a nationwide class of those who (1) obtained prepetition private education loans from Navient or related companies to cover expenses at an institution not accredited under Title IV; (2) later filed for bankruptcy and were issued discharge orders; (3) have never reaffirmed their prepetition private education loan debt; and (4) are being induced to pay their allegedly discharged private education loans. Damages were now also sought.

Navient moved for summary judgment on these claims, arguing that a bankruptcy court has no jurisdiction to interpret and enforce discharge orders entered by courts in other judicial districts and that the plaintiffs' education loans were nondischargeable. The bankruptcy court denied the motion in March 2018.[2] It rejected that the general rule giving an issuing court sole authority to enforce its own injunctions applied to the automatic injunction created by statute when a bankruptcy court grants a discharge under 11 U.S.C. § 727. The court also determined that the kind of loans for educational purposes relevant here, which the parties refer to as "private loans," were not within the ambit of the Bankruptcy Code's bar on the discharge of some student loans. *See* 11 U.S.C. § 523(a)(8).

In the same order, the bankruptcy court first authorized an interlocutory appeal, then certified the order for direct appeal to this court, eschewing the usual initial appellate review by a district court. A bankruptcy court may certify a ruling for direct review by a circuit court of appeals when, among other

---

[2] Wendy L. Landes and Raegena Seitz-Moulds were included without objection as additional putative class members in a Third Amended Complaint, filed after Navient's motion for summary judgment but before the bankruptcy court ruled. No party argues that the issues before us are altered by their joinder. Accordingly, we do not separately discuss the facts of the bankruptcies of the two last-added parties.

No. 18-20254

reasons, it "involves a question of law as to which there is no controlling decision" by that circuit court or the Supreme Court, or because an appeal at that stage in the proceedings "may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(i), (iii). If a bankruptcy court so certifies, the circuit court of appeals then exercises its discretion. § 158(d)(2)(A). A motions panel of this court granted the unopposed motion to authorize the appeal.

## DISCUSSION

We review "grants and denials of summary judgment *de novo*. Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lyda Swinterton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 444 (5th Cir. 2018) (quoting FED. R. CIV. P. 56). Federal Rule of Civil Procedure 56 is incorporated into the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 7056.

Navient has two principal contentions on appeal. The first is that the bankruptcy court either has no jurisdiction to enforce the statutory injunctions arising from a bankruptcy discharge that another bankruptcy court ordered, or at least for prudential reasons may not do so. Second, Navient contends that the plaintiffs' education loans are within the category of loans that under the Bankruptcy Code are nondischargeable.

There are no meaningful factual issues presented to us. Instead, we have legal issues of statutory interpretation. We now turn to those.

*I. Authority to enforce a Section 524 discharge order entered by a bankruptcy court in another judicial district*

In broad brush, these proceedings concern two closed Chapter 7 bankruptcies in which generic discharges, *i.e.*, discharges not specifying the discharged debts, were issued at completion. A discharge "operates as an injunction" against an extensive list of actions that a creditor might take to

collect on the discharged debt.  11 U.S.C. § 524(a)(2), (3).  The discharge is a "substantive right," and that right is "often enforced by a motion for contempt, but [it is] also enforceable through a declaratory judgment action." *Nat'l Gypsum Co. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp.* (*In re Nat'l Gypsum Co.*), 118 F.3d 1056, 1063 (5th Cir. 1997) (citations omitted).  The declaratory judgment was sought in *National Gypsum* by the opening of an adversary proceeding in the bankruptcy court that had granted the debtor's discharge. *Id.* at 1060.  Indeed, Federal Rule of Bankruptcy Procedure 7001(6) states that an adversary proceeding is, among other things, "a proceeding to determine the dischargeability of a debt."

Thus, an available procedure under *National Gypsum* is a declaratory judgment action. A violation of the declaratory judgment will lead to its own remedies such as "damages or an injunction." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 570 (5th Cir. 2005); *see also* 28 U.S.C. § 2202.  The issue for us is identifying the proper court or courts in which such an action can be brought.  May a bankruptcy court other than the one that granted the discharge enforce the injunction?

The closest this circuit has come to answering the question is to hold, in the class action context, that a bankruptcy judge in the Southern District of Texas may exercise 'jurisdiction over claims that arise in other cases administered by other judges" in the same judicial district. *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 753 (5th Cir. 2010).  The *Wilborn* court only briefly discussed the issue of enforcing an injunction arising from the discharge order of a different bankruptcy court in the same district. In the present proceedings, the bankruptcy court's understanding of its authority extended well beyond its home district.  The question of a bankruptcy judge's injunctive reach within its own district has not been answered.

No. 18-20254

The two plaintiff-debtors received general discharges in bankruptcy. Central to the dispute is that Congress has excepted from discharge, among other categories of debt, certain types of student-loan debt. 11 U.S.C. § 523(a)(8). We will deal with the issue of dischargeability in the second part of our opinion and will wait to quote the relevant statute until then.

We have already summarized that the bankruptcy court at this stage answered only two questions. The first answer we review is the "yes" the court gave to the question of whether a bankruptcy court in a judicial district other than the one in which the discharge was entered has authority to interpret the discharge and enforce the injunction. The court rejected Navient's argument that the general rule should apply that the court issuing an injunction is the only one that can enforce it through contempt proceedings. The bankruptcy court first held that general rule was inapplicable because no discretion or individual judgment is exercised in creating the injunction.[3] The form order used for the discharges for the initial two plaintiffs here does not even mention an injunction. The injunction instead arises from this statutory command: "A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action." § 524(a). Because there is "no subjective thought process that requires deference nor is there any risk of misinterpretation of a particular judge's reasoning," the bankruptcy court concluded that the general limitation on enforcement of injunctions only by the issuing court was inapplicable. The court did not cite any case authority to support its analysis. The basic point was that the bankruptcy statutes

---

[3] There is at least one aspect of the bankruptcy discharge that requires individual judicial consideration. The applicable education loans are not discharged "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." § 523(a)(8). Different bankruptcy judges can look at the same facts and reach contrary decisions.

7

No. 18-20254

themselves make clear that no purpose is served by requiring a return to the issuing court to interpret a discharge injunction.

Navient, of course, disagrees that discharge injunctions should be treated differently than others. A principal authority it cites is one of this court's precedents dealing with non-bankruptcy injunctions. There, Chief Judge Charles Clark explained in the context of a claim of securities fraud that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985). A bankruptcy court does continue to have jurisdiction to enforce its orders, and that jurisdiction remains even after the bankruptcy case is closed. *See, e.g., Galaz v. Katona*, 841 F.3d 316, 322 (5th Cir. 2016). The issue for us arises because *Galaz* and other Fifth Circuit precedents do not hold that authority is exclusive in the original court. Navient also argues that regardless of jurisdiction, there are prudential reasons supporting its argument.

Navient's appellate brief recounts the background for an injunction that arises from a discharge, drawing from a scholarly article. Charles Jordan Tabb, *The Historical Evolution of the Bankruptcy Discharge*, 65 AM. BANKR. L. J. 325 (1991). We look at parts of the background in order to understand how a bankruptcy discharge was enforced before a statute was enacted that imposed an injunction. Importantly, we also consider whether another part of the same statutory enactment arguably created a right of enforcement of the injunction by "foreign" courts. If so, then its repeal in 1978 has some meaning.

There was no statutory injunction arising from a discharge until 1970. *Id.* at 326 n.3. A House Report on 1970 bankruptcy legislation explained problems with prior law, including the harassment of debtors:

> The present discharge provisions of the Bankruptcy Act authorize
> the bankruptcy court to determine the right to a discharge, but do

8

No. 18-20254

not give the bankruptcy court express jurisdiction to determine the effect of the discharge. . . . Under present practice, if a bankrupt is sued in State court on a discharged debt, the State court may determine whether the debt in question was or was not discharged. In other words, the jurisdiction over the granting and the enforcing of a discharge is divided, with the result that debtors are frequently harassed and coerced by creditors into paying debts that may have been discharged.

H.R. REP. NO. 91-1502, at 3 (1970).

The 1970 legislation was adopted and provided for an injunction:

f. An order of discharge shall—

(1) declare that any judgment theretofore or thereafter obtained in any other court is null and void . . . ; and

(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

Act of Oct. 29, 1970, Pub. L. No. 91-467, § 3, 84 Stat. 990, 991 (amending Section 14 of the 1898 Bankruptcy Code, codified as 11 U.S.C. § 32(f)).

The statutory detailing of the injunction that results from a discharge has been revised, but the meaning for our purposes is the same: the discharge "operates as an injunction against the commencement or continuation of an action" to collect a relevant debt.  11 U.S.C. § 524(a)(2).

Nothing in the statute creating an injunction explains whether this form of injunction could be enforced only by the bankruptcy court in the issuing district.  Another 1970 provision, though, which appeared immediately after the injunction section, did specifically refer to enforcement in other courts.  It allowed the order of discharge to be registered in another district and to be "enforced in like manner" in the new district as in the issuing district:

g. An order of discharge which has become final may be registered in any other district by filing therein a certified copy of such order and when so registered shall have the same effect as an order of the bankruptcy court of the district where registered and may be enforced in like manner.

9

No. 18-20254

§ 3, 84 Stat. 990, 991 (codified as 11 U.S.C. § 32(g)).[4]  Bankruptcy Rule 404(g) used almost this exact language.  11 U.S.C. app. at 283 (Supp. III 1974).

The 1970 subsection on registration was repealed with adoption of the Bankruptcy Code of 1978.  11 U.S.C. Tbl. I (showing that former Section 32(g) was repealed).  Further, the Bankruptcy Rule that implemented Section 32(g) was revised after the 1978 Code was adopted by deleting "may be enforced in like manner." FED. R. BANKR. P. 4004(f).  Enacted revisions in the wording of statutes are part of "statutory history," not "the sort of unenacted legislative history that often is neither truly legislative (having failed to survive bicameralism and presentment) nor truly historical (consisting of advocacy aimed at winning in future litigation what couldn't be won in past statutes)." *BNSF Ry. Co. v. Loos*, 139 S. Ct. 893, 906 (2019) (Gorsuch, J., dissenting). When Congress makes a significant change in language when it amends an existing statute, it "presumptively connotes a change in meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 256 (2012).  Congress's decision to eliminate language that seemed to allow enforcement of the discharge injunction in a new district[5] gives weight

---

[4] An explanation for what those promoting the 1970 legislation were at least trying to do was given by the National Conference of Referees in Bankruptcy:

> When a bankrupt has moved out of the district where he obtained his discharge in bankruptcy and is sued by a creditor on a discharged debt in the state to which he moved, the bankrupt should be able to enforce the discharge and its injunctive provisions through the district court where he is currently residing. Section 14g [11 U.S.C. section 32(g)] is meant to permit the bankrupt access to his local United States court by registering therein a certified copy of the order granting the discharge.

H.R. REP. NO. 91-1502, at 11.

[5] Learned commentators concluded that Section 32(g) authorized enforcement of a discharge injunction in a new district.  One wrote that with "the 1970 Amendments to the 1898 Act, Congress developed the portable and registerable discharge injunction." Robert P. Wasson, Jr., *Remedying Violations of the Discharge Injunction Under Bankruptcy Code 524…*, 20 BANKR. DEV. J. 77, 88 (2003).

to the argument that after the 1978 Bankruptcy Code was adopted, enforcement in "like manner" in a different district was prohibited.

We now turn to the law that exists today. Registering a judgment in a new court is not a creature primarily of bankruptcy law. Some quite learned professors described the adoption of a general statutory provision for registration in 1948, after an earlier Civil Rules version was rejected as arguably being beyond the rulemaking power of the Supreme Court. 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARK KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2787 (2012). The current statute states:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963. Bankruptcy courts were added to the statute in 1996. Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 203, 110 Stat. 3847, 3849.

Section 1963 permits the clearing of jurisdictional hurdles when the prior judgment was entered in a suit in which federal question was the basis for jurisdiction. The hurdle arises because "an action solely to enforce the judgment would lack that federal question jurisdiction and therefore could not be maintained in federal court" absent some other jurisdictional basis. JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 130.33 (explaining that "a suit on a judgment does not involve a federal question, however important

federal questions may have been to the resolution of the original controversy," and citing *Stiller v. Hardman,* 324 F.2d 626, 628 (2d Cir. 1963)).[6]

The 1970 Bankruptcy Code amendment to permit registration was labeled "an adaptation of 28 U.S.C. section 1963," as it clearly was. H.R. REP. NO. 91-1502, at 11. One significant difference, though, is that Section 1963 is limited to judgments that order the recovery of property or money, which orders discharging debts would not be. As importantly, Section 1963 "does not permit enforcement elsewhere of a decree for injunctive relief." 11 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE § 2787.

In conclusion, the 1970 registration statute was by far the most direct support for allowing one bankruptcy court to enforce another's discharge injunction. That statute, though, is no more, which supports that Congress abolished such enforcement. Current Bankruptcy Rule 4004(f) guides registration but does not authorize "like manner" enforcement as did its predecessor. The foregoing convinces us that registration does not alter the usual procedures for enforcing an injunction.

---

[6] An earlier version of MOORE'S has, since the adoption of Bankruptcy Rule 404(g) and then continuing with current Rule 4004(f), been cited by the Federal Rules Advisory Committee to explain each Rule. *See* Rule 404(g), Adv. Comm. Notes (1976); Rule 4004(f), Adv. Comm. Notes (1983), both citing JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 1.04[2] (2d ed. 1967). We could not locate any archival record of the 1967 treatise section, but some if not all of that section was quoted in a district court opinion. *See Dichter v. Disco Corp.*, 606 F. Supp. 721, 725 (S.D. Ohio 1984). The following excerpt likely is at least some of the reason for the reference to MOORE'S in the Advisory Committee Notes:

> It may be suggested that by authorizing the judgment-creditor to enforce his judgment through registration in other districts, as an alternative to an action on the judgment, substantive rights are conferred upon him, venue requirements are altered, and the jurisdiction of the district court is enlarged. But in purpose and effect the registration of judgments in other districts is only a more convenient and effective method of enforcing them according to their original terms.

*Id.* (quoting MOORE'S FEDERAL PRACTICE ¶ 1.04[2] at 223 (1967)).

We return, then, to the bankruptcy court's first basis for its ruling, which relied on, of all things, logic alone to support that because a discharge injunction needs no discretionary interpretation, there should not be any obligation to return to the issuing court for its enforcement. With respect for so venerable a basis for argument, *i.e.*, straightforward logical reasoning, we conclude more is needed here to overcome the contrary authority.

The bankruptcy court gave as a second basis for its decision, not completely distinguishable from its first, that when enforcing a discharge, a court is simply enforcing a statute. Holding a creditor in contempt "goes to the very core of the bankruptcy process itself." The court relied on a scholarly opinion by Bankruptcy Judge Isgur analyzing the fundamentals in *Cano v. GMAC Mortg. Corp.* (*In re Cano*), 410 B.R. 506 (Bankr. S.D. Tex. 2009). The bankruptcy court here also cited both 28 U.S.C. § 157, which sets out many of the procedures for bankruptcy courts and the authority of the district courts over them, and 28 U.S.C. § 1334, which grants to district courts "original and exclusive jurisdiction of all cases under" the Bankruptcy Code, with some exceptions.

We need not analyze today the complexities of Section 157 addressed by *Cano,* including the differences among cases and proceedings "*arising under* title 11 or *arising in* or *related to* a case under title 11." § 157(a) (emphasis added). We limit our analysis because our question is limited: may a different bankruptcy court than the one that issued the discharge that caused the injunction to arise, enforce that injunction regardless of whether the impediment is jurisdiction, venue, prudential considerations, or something else? The *Cano* court identified but did not resolve that issue: "[r]equiring Plaintiffs to seek civil contempt damages from their 'home court' may be the more appropriate remedy and the only remedy authorized." *Cano*, 410 B.R. at 543. The *Cano* opinion did not need to resolve the issue before us.

No. 18-20254

We next examine precedents concerning contempt authority. "Civil contempt is the normal sanction for violations of the discharge injunction." RICHARD LEVIN & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 524.02(c) (2018). We have used absolute language, though not in a bankruptcy context, that "[i]t is elementary that the court against which a contempt is committed has exclusive jurisdiction to punish for such contempt." *United States v. Barnett,* 330 F.2d 369, 385 (5th Cir. 1963) (citing *In re Debs*, 158 U.S. 564, 594–95 (1895)).

Other circuits have insisted on a return to the bankruptcy court whose discharge order created the injunction. The Eleventh Circuit has held that only the bankruptcy court issuing the discharge has *jurisdiction* to enforce the injunction through contempt. *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 961 (11th Cir. 2012).[7] The Seventh Circuit has said the "responsibility for enforcing the discharge order [is] in the court that issued it." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001) (citing FED. R. BANKR. P. 9020). The cited Bankruptcy Rule 9020 simply says Rule 9014 on "Contested Matters" is what "governs a motion for an order of contempt." The Ninth Circuit has held that both Section 524 and the Bankruptcy Rules require a contempt action in the bankruptcy court that issued the discharge order. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189 (9th Cir. 2011).

The Second Circuit has limited enforcement of discharge injunctions through contempt proceedings to the originating court: "the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." *Anderson v. Credit One Bank, N.A., (In re*

---

[7] Without intimating that it has derivative precedential effect in this circuit, we note as a matter of collegial respect that the opinion is from the circuit with which we until 1981 were joined, and authoring Judge Tjoflat's notable judicial service began on the Fifth Circuit.

*Anderson*), 884 F.3d 382, 390–91 (2d Cir. 2018).  Without labeling the reason as one of jurisdiction, the court explained:

> The power to enforce an injunction is complementary to the duty to obey the injunction, which the Supreme Court has described as a duty borne out of "respect for judicial process." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 387, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980) (internal quotation marks omitted).  That same respect for judicial process requires us to hold that the bankruptcy court alone has the power to enforce the discharge injunction in Section 524.

*Id.* at 391.

Though the Eleventh Circuit in *Alderwoods* concluded that the bar to seeking enforcement in a foreign court was jurisdictional, we pretermit so foundational a holding.  We start with the reality that a violation of the injunction is an affront to the issuing court.  Yes, the injunction arises from statute and not from judicial discretion.  Indeed, as here, the injunction may not even be mentioned in the court's order.  Nonetheless, a central consideration for us is that there is not a sufficiently clear path for deviating from the usual rule.  Instead, what is clear are various obstacles we have identified to taking that path.  We now discuss a final one.

A recent Supreme Court decision placed the civil contempt that results from violating a bankruptcy discharge injunction under the general principles for contempt.  It richly phrased its analysis: "When a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'" *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018)).  Rooted in the soil are "the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Id.*

We do not see a holding in *Taggart* that all the rules for civil contempt were transplanted into bankruptcy, but we do see an imperative that any

deviation from those rules have a substantial justification. Beginning in 1970, there was a statutory argument from Section 32(g) of the 1898 Bankruptcy Code that there was no need to return to the original bankruptcy court, but that argument was repealed in 1978 along with the section. The remainder of what has been argued to us does not suffice to show that we should allow an exception from the usual enforcement rules for injunctions. Though *Taggart* did not lock the gate to any deviations from traditional contempt rules in bankruptcy, very little opportunity to open it was provided.

We adopt the language of the Second Circuit that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold "respect for judicial process." *Anderson*, 884 F.3d at 391. The bankruptcy court erred in holding that it could address contempt for violations of injunctions arising from discharges by bankruptcy courts in other districts. Therefore, as to Shahbazi and at least those debtors whose discharges were entered by courts in other districts, the bankruptcy court in these proceedings has no authority to enforce the resulting injunction.

Though the bankruptcy court did not reach the issue of certification of a class, we point out that because of the limitation on enforcement we have just identified, and indeed because we are aware of no prior certification of a class that includes debtors whose discharges were entered by bankruptcy courts in other districts, certifying such a class would be highly dubious. We also leave for the court on remand the separate issue, if it becomes relevant, of whether that court has authority to enforce the injunctions arising from discharges entered by any bankruptcy court in the same judicial district.

## II. Dischargeability of private student loans

The bankruptcy court also answered the question of whether the loans that the plaintiffs received were subject to the statutory prohibition of

No. 18-20254

discharge of certain education loans. The court's answer to that question was "no." Though the ruling will impact only the discharges of loans by that court or perhaps in that judicial district, it remains an answer we must review.

Congress has excepted certain categories of debt from discharge, including much student-loan debt. All exceptions to discharge are to be interpreted narrowly in favor of the debtor to preserve the "fresh start" the Bankruptcy Code provides for debtors. *Hickman v. Texas* (*In re Hickman*), 260 F.3d 400, 404–05 (5th Cir. 2001).[8] The current articulation of the exception is that "the discharge under section 727 [and other sections] does not discharge an individual debtor from any debt –"

. . .

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>
> > (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> >
> > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a). In summary, Subsection (A)(i) applies to loans, *etc.* in which a governmental unit or a nonprofit institution had a defined role. Subsection (B) requires a journey through multiple statutes to understand its meaning. A partial explanation is that the referenced Internal Revenue Code section

---

[8] We quote what might seem to be authority that the opposite presumption applies to education loans. Though referring to a party's argument, the Supreme Court could be seen as agreeing that Congress made "student loan debt presumptively nondischargeable." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). In context, though, the Court is referring only to education loans from states. *Id.*

17

defines a "qualified education loan" as, among other things, "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses," along with other conditions.  26 U.S.C. § 221(d).  The qualified expenses are "the cost of attendance" at the eligible education institution, reduced by scholarships and other payments.  *Id.*  An eligible institution is defined, with exceptions, in Internal Revenue Code Section 25A(f)(2), as one "which is eligible to participate in a program under Title IV" of the Higher Education Act.  There is no claim that Subsection (B) applies.

Subsection (A)(ii) is Navient's target, which deals clearly with scholarships and stipends.  Less clear, but definable, is what else it deals with. We restate the statutory language: there must be "an obligation to repay funds received as an educational benefit, scholarship, or stipend."  § 523(a)(8)(A)(ii). Navient argues this language plainly includes private student loans, and that Fifth Circuit precedent supports this argument.  Navient also contends that lower court cases that disagree had misapplied canons of statutory interpretation to reach their conclusions.  Finally, Section 523(a)(8)'s legislative history supports including private student loans.

The plaintiffs, though, argue that Subsection (8)(A)(ii)'s text and the Bankruptcy Code's purpose to give debtors a fresh start require reading the subsection narrowly.  Further, reading the subsection through the canons of statutory interpretation affirms this narrow reading, as do the drafters' language and grammar choices.  Finally, the legislative history does not show Congress intended to exempt private education loans from discharge.[9]

---

[9] Navient does not argue there is relevance to the fact that both Crocker and Shahbazi classified the relevant debts as "educational" on Schedule F of their bankruptcy filings. Importantly, we do not see on the forms in the record or in the instructions for completing such forms any guidance on labeling a debt as "educational" or a statement that it should not be so labeled unless it is nondischargeable under Section 523(a)(8).

No. 18-20254

The bankruptcy court here determined Subsection (8)(A)(ii) was unambiguous.  The court considered the absence of the word "loan" and the inclusion of the concepts of stipends and scholarships to narrow the meaning of receiving an educational benefit to include only such funding as "tuition advances by an employer that must be repaid if the employee leaves her employment within a certain period of time."  The court also focused on the Congressional use of the word "as" to precede "educational benefit."  To the court, that meant that what was received was the educational benefit, akin to scholarships and stipends, not that what was received could be used to pay for educational benefits.  These private education loans were thus dischargeable.

There are some general interpretive rules to apply.  Discharge exceptions are to be construed "narrowly" and "in favor of the debtor" in order to further the Bankruptcy Code's purpose of giving debtor's a "fresh start."  *Miller v. J.D. Abrams Inc.* (*In re Miller*), 156 F.3d 598, 602 (5th Cir. 1998).  Exceptions to discharge "should be confined to those plainly expressed."  *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998).  Regardless, we may not ignore plain textual language, and as we discuss, Congressional action generally has enlarged the category of education loans that are not dischargeable.

We start with text and context, then discuss some of the prior statutory language that the current statute has replaced or supplemented.  An initial read of Subsection (A)(ii) does not suggest that Congress used the phrase "obligation to repay funds received as an educational benefit" in order to include private student loans.  The immediately preceding Subsection (A)(i) exempts "educational . . . loan[s]."  Subsection (B) exempts "education loan[s]."  Subsection (A)(ii) makes no reference to loans, its focus seemingly elsewhere.

Navient argues that an "obligation to repay funds received" is expansive and includes loans, citing to other statutes and federal regulations that use "obligation to repay" in reference to loans.  The fact that an obligation to repay

19

is one way to refer to loans is correct, but we are trying to discern the meaning in the context of a particular enactment. If "'Congress includes particular language in one section of a statute but omits it in another' — let alone in the very next provision" — courts presume "Congress intended a different meaning." *Loughrin v. United States,* 573 U.S. 351, 358 (2014) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)). Congress sandwiched Subsection (A)(ii), which does not mention loans at least by name, between two subsections that explicitly do. That structure is at least a start to saying educational benefits are not loans.

We now look more closely at Subsection (A)(ii)'s text. The subsection applies to the "obligation to repay" funds received as "an educational benefit," "scholarship," or "stipend." The prefatory language, *i.e*, that there is "an obligation to repay," appears only in this subsection. The phrase is superfluous when referring to loans, but it is quite relevant to payments with contingent obligations. Next, a stipend is a "fixed and regular payment, such as a salary." AMERICAN HERITAGE COLLEGE DICTIONARY, 1220 (3d ed. 1997). A scholarship is a "grant of financial aid to a student." *Id*. The key phrase, "educational benefit," is the broadest. We consider unnecessary a dictionary definition of "educational," but "benefit" needs one. Because the term is so broad, the limiting principle of *noscitur a sociis* potentially should be used — over Navient's objection, though — to understand the phrase in context. In a recent application, the Supreme Court said there are times we should "look to *noscitur a sociis*, the well-worn Latin phrase that tells us that statutory words are often known by the company they keep." *Lagos v. United States*, 138 S. Ct. 1684, 1688–89 (2018). The "common quality" in a list that is the focus of the *noscitur a sociis* inquiry "should be its most general quality — the least common denominator, so to speak — relevant to the context." SCALIA & GARNER, READING LAW, 196.

20

One general quality in the relevant phrase is that stipends and scholarships "signify granting, not borrowing." *McDaniel v. Navient Sols., LLC* (*In re McDaniel*)*,* 590 B.R. 537, 549 (Bankr. D. Colo. 2018). Those grants may be conditional, but satisfaction of the conditions leaves them as grants. The common quality is that scholarships and stipends *may not* need to be repaid.

Navient argues that *noscitur a sociis* should not apply because the statutory list is too brief. The Supreme Court recently used the doctrine in a four-item list: "lost income and necessary child care, transportation, and other expenses." *Lagos*, 138 S. Ct. at 1688 (quoting 18 U.S.C. § 3663A(b)(4)); *but see Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010) ("A list of three items . . . is too short to be particularly illuminating."). *Lagos* used three specific items to give meaning to a catchall. *Id.* at 1688–89. Authors Scalia and Garner did use a three-item list to explain proper use of this doctrine. SCALIA & GARNER, READING LAW, at 196–97. The example was a state statute criminalizing the carrying of a firearm in a motor vehicle unless, among other conditions, it was "contained in a closed and fastened case, gunbox, or securely tied package." *Id.* (discussing *State v. Taylor*, 594 N.W. 2d 533, 535–36 (Minn. Ct. App. 1999)). The Minnesota court held that a purse was not a proper "case" — despite that it was "closed and fastened" — because the commonality of the other two items was that they were containers that kept a firearm from being readily accessible. *Id.*

The brevity of the list in the text we must review does not compel ignoring the relevant term's neighbors.

We offer one definition of "benefit," namely, a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." AMERICAN HERITAGE COLLEGE DICTIONARY, at 127. Whatever definition is used, we begin our analysis with

No. 18-20254

a tentative acceptance that the benefit generally does not need to be repaid. Our analysis continues, though.

Navient claims that a different definition of "benefit" is best: "an advantage or profit gained from something." OXFORD ENGLISH DICTIONARY (3d ed. 1997). That definition is limitless, invoking the very reason for the *noscitur a sociis* doctrine. Navient's offering does not capture the essentials of "stipend" and "scholarship," which identify narrow categories of benefits.

Indeed, we see a lack of common sense in interpreting the list as containing two specific and quite limited kinds of payments that, among other things, do not usually require repayment, and a third item preceding the two that was meant to be a catchall for loans and most everything else financially benefitting a student. Such an understanding of what Congress did with those words creates a superfluity of words in the other parts of Section 523(a)(8). If an "obligation to repay funds including educational benefits" includes repaying private student loans, that requires defining "educational benefit" to include loans, which then means it also covers the public loans that are the focus of Subsection 523(a)(8)(A)(i). *See In re Essangui*, 573 B.R. 614, 624 (Bankr. D. Md. 2017). Under Navient's interpretation, government loans covered by Subsection (A)(i) and qualified education loans covered by Subsection (B) would also be covered by Subsection (A)(ii), rendering the other subsections serving little purpose. Courts have a "duty to give effect, if possible, to every clause and word of a statute." *Bennett v. Spear*, 520 U.S. 154, 173 (1997). Concomitantly, "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).

Navient calls this analysis "hyperbolic," reframing the surplusage as simply "some overlap" between the subsections. Navient, though, fails to explain how the other subsections serve much purpose if the broad reading of

22

Subsection (A)(ii) applies. Navient argues that Subsection (A)(ii)'s receipt of funds requirement leaves Subsection (B) with work to do. For example, a loan obtained by a grandfather for his grandson to attend a Title IV college would not be covered by Subsection (A)(ii) because the grandfather did not receive the benefit, but it was covered by Subsection (B). *See Wills v. Sallie Mae Servicing* (*In re Wills*), No. 08-80404-FJO-07, 2010 WL 1688221, at *7 (S.D. Ind. Apr. 23, 2010). Maybe so, but because every exemption in these provisions is a type of fund used by recipients to advance their education, Congress could have just exempted from discharge any "obligation to repay funds received as an educational benefit" and left it at that. The redundancies created by Navient's interpretation of Subsection (A)(ii) create more than a modest overlap and can be avoided by adopting the narrower interpretation of that subsection.

Navient seeks to block any interpretive effort by this court by arguing that one of our precedents makes the sole issue for us "whether Plaintiffs' loans expressed an educational purpose at the time of application, origination, and disbursement." *See Murphy v. Penn. Higher Educ. Assistance Agency* (*In re Murphy*), 282 F.3d 868, 870–72 (5th Cir. 2002).[10] Pretty bold analysis of *Murphy*, and errant in our view. *Murphy* applied the 1990 language applicable to loans insured by the federal government. *Id.* at 870. The question was whether such a federally-insured loan was "educational" even as to proceeds spent on living expenses. *Id.* at 870, 873. The court held that the educational

---

[10] The *Murphy* court discussed the added difficulties the debtor's strained reading of "educational benefit" in the 1990 statute's reference to federally-insured loans would create for the second use of the phrase in Section 523(a)(8), which the court twice quoted as "education benefit scholarship or stipend," *i.e,* without commas. *See Murphy*, 282 F.3d at 870, 871. That made the first two words adjectival, not a separate category, and the court's analysis focused on whether the two words modified both "scholarship" and "stipend." *Id.* at 871–72. It appears to us, though, that Congress in 1990 adopted this language: "obligation to repay funds received as an educational benefit, scholarship or stipend." Crime Control Act of 1990, Pub. L. No. 101-647, § 3621, 104 Stat. 4789, 4964–65. Regardless, the statute as it exists today does make "educational benefit" a third category in Section 523(a)(8)(A)(ii).

purpose of such a loan was defined by its purpose upon disbursement by the lender and not by the way it was spent by the borrower. *Id.* at 873. *Murphy* did not analyze our issue, and we must conduct our own evaluation.

An argument by plaintiffs about grammar, to which we give less weight than the foregoing because it relies on such a minor word-choice, is that when Congress exempted funds "received *as* an educational benefit" rather than "*for* an educational benefit," the natural reading is that it describes what the giver was giving and not what the receiver could make of the gift. The phrase "*as* an educational benefit" indicates that the funds themselves are the educational benefit (like tuition payments), whereas the phrase "*for* an educational benefit" might well encompass funds conveyed for educational purposes, including private student loans. *Essangui*, 573 B.R. at 621. At least it can be said the drafters' word choice does not support inclusion of private student loans.

We also examine the statutory history for Subsection (a)(8), *i.e.*, the history of enacted revisions.[11] Since 1970, Congress has expanded the scope of non-dischargeable student loans. *See, e.g.*, *Cazenovia Coll. v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 86–88 (2d Cir. 2000) (surveying the history of Subsection (a)(8)). We find that the phrase "educational benefit" first appeared in Subsection (a)(8) in 1990, which excepted from discharge a debt

---

[11] Plaintiffs also urge us to examine legislative history. Various court decisions assert that in 1990, the nondischargeability of "an obligation to repay funds received as an educational benefit, scholarship, or stipend," was added to confirm an Eighth Circuit interpretation holding that certain conditional payments were loans covered by Section (a)(8). *See, e.g.*, *Essangui*, 573 B.R. at 618 (citing *U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986)). A House Judiciary Committee hearing on the bill revealed that the amendment was drafted by a committee of United States Attorneys. Fed. Debt Collection Procedures: Hearing before the Subcomm. on Econ. & Commercial Law of the Comm. on the Judiciary, H.R., 101st Cong., 2, 3 (1990) (statements by Rep. Brooks and U.S. Att'y Bob Wortham). In answers to written questions, the chair of the outside drafting committee wrote that VA benefits were an example of a relevant "education benefit." *Id.* at 74–75 (answers of Bob Wortham). We acknowledge this history but do not rely on it. Meaning to a statute comes from its text, analyzed by employing appropriate tools of statutory interpretation which we conclude do not include legislative history.

for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, *or for an obligation to repay funds received as an educational benefit, scholarship or stipend.*

Crime Control Act of 1990, Pub. L. No. 101-647, § 3621, 104 Stat. 4789, 4964-65 (codified as 11 U.S.C. § 523(a)(8)) (emphasis added).

Before explaining the latest change, made in 2005, we remark on the near-unanimity of courts' understanding of the 1990 change. One court, after surveying the caselaw, stated that the language we italicized above was "generally interpreted . . . to create a new category of nondischargeable debt that excluded for-profit loans." *Essangui*, 573 B.R. at 619. Navient agrees that was the trend, but it argues that by the amendments to Subsection (a)(8) in 2005 which we discuss next, Congress brought private student loans within the exceptions to discharge. The parties do not agree about the post-2005 caselaw. Navient calculates the majority as holding that any funds received for an educational purpose, including private student loans, were covered by the new language.[12] *See, e.g.*, *Brown v. CitiBank, N.A. (In re Brown)*, 539 B.R. 853, 858–59 (Bankr. S.D. Cal. 2015). The plaintiffs count the cases differently. They both agree that since about 2015, there has been increasing caselaw that holds private student loans are not exempt from discharge. *See, e.g.*, *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431, 435–37 (W.D. Pa. 2018).

---

[12] The only circuit court opinion cited to us on this issue is unpublished. *Desormes v. Infilaw Corp. (In re Desormes)*, 569 F. App'x 42 (2d Cir. 2014). Thus, no matter what we decide, there will not be a split in precedential circuit authority. The opinion was quite brief, with the only description of the debt being that it came from a "student loan" and "was excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii)." *Id.* at 43. There was no analysis of how to interpret the three-item statutory list. The debtor's argument centered on the supposed necessity for "a transfer of funds directly to the debtor" before a loan would "be received within the meaning of the statute." *Id.* The bankruptcy court's opinion indicates the loan was from the school to pay the student's tuition. *Desormes v. Charlotte School of Law, Inc. (In re Desormes)*, 2012 WL 4106765 at *1 (Bankr. D. Conn. 2012).

No. 18-20254

In 2005, Congress replaced the entirety of Subsection (a)(8) with a new subsection with subparts. We italicize the only significant new language:

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for —

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) *any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.*

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, Title II, § 220, 119 Stat. 23, 59 (emphasis added) (codified as 11 U.S.C. § 523(a)).

The significant change was to make nondischargeable "any other . . . qualified educational loan," which Navient concedes the loans here are not, by adding Subsection (B). Most importantly for us, Congress barely tweaked the 1990 language of "obligation to repay funds received as an educational benefit, scholarship or stipend" — it inserted a comma after "scholarship." Navient acknowledges that from 1990 to 2005, the interpretation of stipends, scholarships, and educational benefits had excluded for-profit loans. We see what did not happen to this language in 2005 as invoking this principle: "If a word or phrase has been . . . given a uniform interpretation by inferior courts..., a later version of that act perpetuating the wording is presumed to carry forward that interpretation." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2520 (2015) (quoting SCALIA & GARNER, READING LAW 322). Navient argues that severing Subsection (A)(ii) from (A)(i) allowed (A)(ii) to cover a broader scope of education financing, including

26

private education loans.  All we see is a change to the structure of the overall statute but no real change to the language that controls the case before us.

Navient's assertion that the 2005 amendment made all private student loans nondischargeable is not only unsupported by the text, it is unsupported by some of Navient's authorities.  Among them is *Corletta v. Tex. Higher Educ. Coordinating Bd.* (*In re Pappas*), 517 B.R. 708, 716–17 (Bankr. W.D. Tex. 2014).  That case says no more than that Congress amended Subsection (a)(8) in 2005 "to apply to private loans as well" without identifying Subsection (a)(8)(A)(ii) as the mechanism for this change.  *Id.* at 717.  What brought a new category of private loans into the discharge arena was the language of Subsection (a)(8)(B), the only meaningful 2005 addition.

This court has recently discussed the 2005 change to the statute.  *See Thomas v. Dep't of Educ.* (*In re Thomas*), 931 F.3d 449 (5th Cir. 2019).  The case concerned the "undue hardship" test that allows the discharge of an education loan.  *Id.* at 451–55.  The loans at issue were from the United States Department of Education.  *Id.* at 450.  That made them nondischargeable under Subsection 523(a)(8)(A)(i) as being "insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution."

The 2005 revision was "in response to the growing trend of commercial lending," and the amendment's purpose was to "make qualified private student loans harder to discharge, prohibiting discharge in all cases, unless repayment would create 'undue hardship' for the debtor."  *Id.* at 453.  That is a description of the new Subsection (a)(8)(B).  The definition of a "qualified education loan" is in Section 221(d)(1) of the Internal Revenue Code of 1986, and, as stated before, Navient accepts that Subsection (a)(8)(B) does not apply here.

In a supplementary letter to this court on *Thomas*, Navient implicitly recognized that much of the new opinion was not on point, but it quoted the

court's language that "Section 523(a)(8) as it stands today excepts virtually all student loans from discharge" with the caveat about undue hardship. *Thomas*, 931 F.3d at 453. That statement is a fair summary of the reach of nondischargeability, but before us is a category of loan that has not (yet) been reached by Subsection 523(a)(8).

We find nothing in this explanation of the 2005 revisions to alter our interpretation that Subsection 523(a)(8)(A)(ii) applies only to educational payments that are not initially loans but whose terms will create a reimbursement obligation upon the failure of conditions of the payments.

In conclusion, the only possibly applicable part of the relevant statute is Subsection 523(a)(8)(A)(ii). In interpreting that provision, we rely on the *noscitur a sociis* doctrine, the need to avoid surplusage, Congressional ratification in 2005 of prior interpretations, and the command that discharge exceptions are interpreted narrowly in favor of debtors. We conclude that "educational benefit" is limited to conditional payments with similarities to scholarships and stipends. The loans at issue here, though obtained in order to pay expenses of education, do not qualify as "an obligation to repay funds received as an educational benefit, scholarship, or stipend" because their repayment was unconditional. They therefore are dischargeable.

\* \* \*

We REVERSE the bankruptcy court's determination that it has authority to enforce a discharge injunction entered by a different district's bankruptcy court. Any debtors seeking enforcement of injunctions due to discharges entered in other districts should have their proceedings dismissed or transferred. We AFFIRM the determination that loans such as those in issue here are dischargeable. We REMAND to the bankruptcy court.

28