**REVISED June 18, 2020**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60246

United States Court of Appeals
Fifth Circuit

**FILED**
May 29, 2020

Lyle W. Cayce
Clerk

MICHAEL WAYNE MCINTYRE,

  Plaintiff - Appellant

v.

NISSAN NORTH AMERICA, INCORPORATED; CALSONICKANSEI
NORTH AMERICA, INCORPORATED,

  Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before OWEN, Chief Judge, and SOUTHWICK and OLDHAM, Circuit Judges.
LESLIE H. SOUTHWICK, Circuit Judge:

The previous opinion is withdrawn and the following is substituted.

The plaintiff claims he was wrongfully discharged for having a firearm in his vehicle parked in the employee lot. He relies on a state statute permitting employees in some circumstances to have firearms in their parked vehicles. The district court held that a statutory exception applied and granted the defendants' motions for summary judgment. We agree and AFFIRM.

No. 19-60246

FACTUAL AND PROCEDURAL BACKGROUND

Michael Wayne McIntyre was an employee of CalsonicKansei North America, Inc.  That company was a contractor at Nissan North America's automobile manufacturing plant in Canton, Mississippi.  As a CalsonicKansei employee, McIntyre would park his vehicle in the plant's Lot 1B, which Nissan owned and licensed to CalsonicKansei for use by the latter's employees.  Lot 1B was located at the back of the plant.  The entire plant was surrounded by a chain-link perimeter fence topped with barbed wire.  To access Lot 1B, vehicles had to pass through two separate entrances: Entry 1, located at the plant's perimeter fence, and Entry 1A, located approximately 75 yards inside the perimeter fence.  There was a no-trespassing sign posted at Entry 1 stating that only Nissan employees, contractors, and approved visitors were permitted inside the perimeter fence.  Entry 1A was secured with retractable drop arms.  According to McIntyre, the drop arms were always raised, but according to CalsonicKansei and Nissan, the drop arms were kept down except during shift changes.  There were security cameras directed at Entry 1A, which Nissan's security contractor monitored from a central security office located at the plant.  Security officers also continuously patrolled the entire Nissan plant, including Lot 1B.  At all relevant times, Nissan and CalsonicKansei both had policies prohibiting firearms on company property, including the parking lots.

On February 12, 2016, CalsonicKansei received an anonymous tip that McIntyre had a loaded firearm in his vehicle that was parked in Lot 1B. CalsonicKansei's human resources manager accompanied McIntyre to Lot 1B. There, a security officer searched McIntyre's vehicle and found a loaded gun in the center console.  McIntyre was sent home and told that he would be contacted after CalsonicKansei decided how to handle the situation. McIntyre's employer decided to handle it by firing him on February 16.

2

No. 19-60246

McIntyre filed a wrongful discharge claim against CalsonicKansei and Nissan, alleging his discharge was in violation of a Mississippi statute permitting employees to have firearms in their vehicles. There is an exception in the statute, though, when the lot is sufficiently secure. The district court granted summary judgment to both defendants based on that exception. The court held, alternatively, that McIntyre's wrongful discharge claim failed as a matter of law because he was discharged for a collective set of reasons and not solely because of the firearm in his vehicle. Finally, the court held that McIntyre's claim failed with respect to Nissan because that company was not McIntyre's employer. This timely appeal followed.

## DISCUSSION

"We review a grant of summary judgment *de novo*, applying the same legal standards as the district court." *Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)). "We construe all facts and inferences in the light most favorable to the nonmoving party." *Id.*

Mississippi is an employment-at-will jurisdiction. *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993). An employer may discharge an employee "for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Id.* at 606 (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 253–54 (Miss. 1985)). McIntyre claims that the following statute creates an impermissible reason:

> (1) Except as otherwise provided in subsection (2) of this section, a
> public or private employer may not establish, maintain, or enforce

No. 19-60246

any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area.

MISS. CODE. ANN. § 45-9-55(1).  The referenced exception is this:

(2) A private employer may prohibit an employee from transporting or storing a firearm in a vehicle in a parking lot, parking garage, or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.

§ 45-9-55(2).

McIntyre argues that his discharge was wrongful under subsection (1). CalsonicKansei relies on the exception set out in subsection (2) and argues that access to the lot where McIntyre parked was sufficiently restricted.  Nissan agrees that the exception applies.  More fundamentally as to Nissan's defense, it relies on the fact that it was not McIntyre's employer.

We are here because McIntyre filed suit solely on the basis of a claimed violation of the statute.  The Mississippi Supreme Court has resolved the foundational issue for us by holding that at least some violations of the statute are actionable.  *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 853–54 (Miss. 2016).  The court relied on caselaw that when there is an "express legislative action" or a "prohibition[] contained in federal or state law," an employee could bring suit for being discharged in disregard of such law.  *Id.* at 852, 854 (quoting *Kelly v. Miss. Valley Gas Co.,* 397 So. 2d 874, 875 (Miss. 1981) ("express legislative action"), and *Galle v. Isle of Capri Casinos, Inc.*, 180 So. 3d 619, 623 (Miss. 2015) ("prohibitions")).  The *Swindol* court held that a state constitutional right to have and carry firearms, a statute that made clear it was not a criminal offense to have a firearm within a motor vehicle, and finally the employee parking lot statute itself were the "express legislative action" and

the "state law prohibitions" that made discharge impermissible and permitted a suit to assert that claim. *Id.* at 854 (citing MISS. CONST. art. 3, § 12; MISS. CODE ANN. § 97–37–1(2); and MISS. CODE ANN. § 45-9-55)).

As we examine that decision for application here, we consider first whether *Swindol* was marking a new course that we need to navigate or instead is consistent with Mississippi caselaw that "[u]nless the legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Tunica Cnty. v. Gray*, 13 So. 3d 826, 829–30 (Miss. 2009) (quoting *Doe v. State ex rel. Miss. Dep't of Corr.*, 859 So. 2d 350, 356 (Miss. 2003)). In other words, there is no "private cause of action when there is no apparent legislative intent to establish one." *Hill v. City of Horn Lake*, 160 So. 3d 671, 681 (Miss. 2015). The reason suit for improper discharge could be brought in *Swindol* was not, to use the *Kelly* case that *Swindol* discussed, due to an explicit statutory creation of a remedy. Instead, it was an understanding of the necessary effect of what was clearly expressed and prohibited by two different statutes and a section of the state constitution.

The *Swindol* court did not use the terminology of analyzing legislative intent, though the *Kelly* case it cited is part of that line of cases. The just-quoted *Hill* opinion, though, was handed down barely a year earlier, and then the focus on legislative intent was restated after *Swindol*. *See Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 184, 184 n.11 (Miss. 2018). Thus, we consider it to be implicit that *Swindol* was not rejecting this caselaw. Indeed, by combining the legislative direction from two different statutes and adding impetus from the state constitution, the *Swindol* court found a sufficiently powerful prohibition to allow private enforcement. *Doe*, 859 So. 2d

at 356. Exactly how *Swindol* fits within prior Mississippi law in this area may not be completely explained, but we conclude that caselaw remains applicable.

Second, even though *Swindol* held there is a private right of action under this statute, some interpretive work remains, namely, analyzing the statutory exception. That causes us to examine the Mississippi Supreme Court's approach to statutory interpretation in order to understand how it would analyze the issue. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012). Among the rules is that when "the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011). The state legislature has weighed in too: "All [nontechnical] words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning." MISS. CODE ANN. § 1-3-65. The state court examines dictionaries for definitions. *Lawson*, 75 So. 3d at 1028.

The Section 45-9-55(2) exception applies if access to Lot 1B was "restricted or limited." Those words have commonly understood meanings, and we quote from a dictionary to provide our phrasing. "Restricted" means "available to the use of particular groups or [specifically] excluding others." *Restricted*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). "Limit" means "to curtail or reduce in quantity or extent." *Limit*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). The statute provides that if either a gate or a security station exists, a parking lot is "restricted or limited"; a catchall follows of some "other means of restricting or limiting general public access." § 45-9-55(2).

In one district court opinion to which McIntyre refers, the parking area was found not to be restricted or limited in the statutory sense when it had "no

gate, fence, or security station" and was "surrounded on all sides by roadways and open fields." *Parker v. Leaf River Cellulose, LLC*, No. 2:14-CV-9-KS-MTP, 2017 WL 2197130, at *1 (S.D. Miss. May 18, 2017). The only security station was "located across a public road from the parking area," approximately 145 feet away. *Id.* at *3. In another case that also found a lack of sufficient limitation or restriction, the parking lot had security cameras and patrols, but there were illegible no-trespassing signs and the defendant did not contend that access to the lot was controlled. *See Smith v. Huntington Ingalls Inc.*, 363 F. Supp. 3d 711, 714, 718–19 (S.D. Miss. 2019). A third district court case involved a parking lot patrolled by security officers and cameras and lined by "a low fence consisting of one cable strung through short posts." *Cherry v. Huntington Ingalls Inc.*, No. 1:18CV88-LG-RHW, 2019 WL 6467825, at *5 (S.D. Miss. Dec. 2, 2019). Nonetheless, the court concluded the statutory exception did not apply because the restrictions and limitations did not "resemble a physical barrier at the access points of a parking lot." *Id.*

Those three decisions are not precedent for us, but they are useful interpretations. The district court in *Parker* applied the *noscitur a sociis* canon, in which part of a statutory list can get meaning from its associates. *Parker*, 2017 WL 2197130, at *3. A list of two specific items like this one is often seen as too short to give meaning to a catchall. *See In re Crocker*, 941 F.3d 206, 219 (5th Cir. 2019). Nonetheless, federal interpretive rules are not the important ones in this appeal. The Mississippi Supreme Court has used this canon, but it has not addressed numerosity. *See, e.g.*, *State Farm Ins. Co. v. Gay*, 526 So. 2d 534, 537 (Miss. 1988). We do know, though, that canons of interpretation are not to be used when the meaning is plain. *Lawson*, 75 So. 3d at 1027. Our analysis, then, starts with whether the words of this statutory exception are unambiguous as applied to the facts of this case.

No. 19-60246

Gates and security stations satisfy the statute's specific terms. So will "other means of restricting or limiting general public access." § 45-9-55(2). Restricting and limiting are not terms that imply impassable barriers. Still, for the provision to be an exception to and not an elimination of employees' rights to possess firearms in vehicles, the means adopted must have a more than negligible impact on access. Certainly, it is for the state courts to define this language with precision. It is enough in this case for us to say that the methods Nissan adopted more than suffice. We summarize them.

The drop arms, whatever the facts on how often they were down, provided at least a periodic limitation. Further, a security camera was directed at Entry 1A and was monitored from a central security office. Security officers continuously patrolled the entire plant, including Lot 1B. An additional limit to the public's access to Lot 1B was created by the barbed-wire-topped, chain-link fence surrounding the entire plant. We conclude that fact is statutorily relevant because limiting access to a larger facility will also limit access to its individual components. Finally, there were visible no-trespassing signs posted at all plant entrances. Signs limit by declaring there is no right to enter. Indeed, posted notice prohibiting entry is a significant legal restriction because entering another's property in disregard of a properly displayed sign can be a criminal offense. *See* MISS. CODE ANN. § 97-17-97.

There is no ambiguity to the statutory terms as applied to these facts. We therefore conclude that the general public's access to Lot 1B was "restricted or limited," and the statutory exception to the right of an employee to have a firearm in his vehicle applies. We need not consider Nissan's other arguments.

AFFIRMED.

8