# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-11091

United States Court of Appeals
Fifth Circuit

**FILED**
July 30, 2019

Lyle W. Cayce
Clerk

In the Matter of: VERA FRANCES THOMAS

> Debtor

VERA FRANCES THOMAS,

> Appellant

v.

DEPARTMENT OF EDUCATION,

> Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, HO, and OLDHAM, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Thomas challenges the bankruptcy court's denial of discharge of her student loan debt pursuant to 11 U.S.C. § 523(a)(8). This court, like the bankruptcy and district courts, is bound by our previous interpretation of the discharge provision in *In re Gerhardt,* 348 F.3d 89 (5th Cir. 2003). Finding no error, we AFFIRM.

## I. Factual Background

Vera Frances Thomas, the Appellant, is over 60 years old and had to file a Chapter 7 bankruptcy case in 2017. Ms. Thomas suffers from diabetic

No. 18-11091

neuropathy, a degenerative condition that causes pain in her lower extremities. Ms. Thomas is now unemployed and subsists on a combination of public assistance and private charity. In February 2012, however, she had worked for eight years at a call center in Southeastern Virginia and was earning $11.40 per hour with benefits. That year, Ms. Thomas decided to enroll at a local community college to improve her career prospects (she had a high school diploma, but no higher education credits). She obtained two $3,500 loans through the Department of Education, the first on February 14, 2012 and the second on September 21, 2012 to finance her first two semesters of courses. Ms. Thomas did not return for a third semester, and her loans went into repayment in December 2013. In spring 2014, she made payments of $41.24 and $41.61 on the loans.

Ms. Thomas's health began to decline significantly in 2014 when she was diagnosed with diabetic neuropathy. The condition, which often reduces circulation in patients' lower extremities, caused muscle weakness, numbness, and pain in her legs and feet after prolonged standing. Ms. Thomas frequently took unpaid leave from work at the call center to manage her symptoms and incurred significant medical expenses. In 2016, her employer was acquired by another company, and the new employer fired her for violating company policies. Because she was terminated for cause, Ms. Thomas was ineligible for unemployment benefits.

To defray costs, Ms. Thomas moved to Texas to live with her then-boyfriend. She obtained work with Perfumania, then Whataburger, and finally UPS. But each job required her to be on her feet, and she could not maintain these positions. Since quitting UPS in 2017, Ms. Thomas has not obtained employment that comports with her need for sedentary work.

Unable to make payments on her student loans and other significant debts, Ms. Thomas filed Chapter 7 bankruptcy in Dallas and received a general

## No. 18-11091

discharge of her debts. Seeking a discharge of her student loan debt as well, Ms. Thomas initiated an adversary complaint in bankruptcy court against the Department of Education.

### II. Procedural Background

To discharge student loan debt under the Bankruptcy Code, a debtor must show that the debt would impose an "undue hardship" on the debtor if it is not discharged. 11 U.S.C. § 523(a)(8).[1] In *In re Gerhardt*, 348 F.3d 89 (5th Cir. 2003), this court adopted the three-prong test for evaluating "undue hardship" claims established by the Second Circuit in *Brunner v. New York State Higher Education Service Corp.*, 831 F.2d 395 (2d Cir. 1987). To justify the discharge of student loan debt under this test, a debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [herself] and [her] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Gerhardt*, 348 F.3d at 91 (quoting *Brunner*, 831 F.2d at 396).

The bankruptcy court held a trial to review Ms. Thomas's complaint, applied *Gerhardt*, and determined that "Ms. Thomas has not met her burden of showing undue hardship under the controlling standard in the Fifth Circuit . . . ." The bankruptcy court concluded that she had satisfied the first prong of *Brunner*—showing an inability to maintain a minimal standard of living if forced to repay the loan—because her monthly expenses ($640) exceeded her monthly income ($194). Ms. Thomas failed to pass *Brunner*'s second standard,

---

[1] This provision states: "A discharge under section 727…of this title does not discharge an individual debtor from any debt … unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--[enumerated government-backed and other student loans]." 11 U.S.C. § 523(a)(8).

No. 18-11091

however, because she "conceded that she is unable to show she is completely incapable of employment now or in the future;" she admitted that she could not establish that her present state of affairs would persist for a significant portion of the loans' repayment period.

The bankruptcy court noted that the exceptionally demanding second prong of *Brunner* requires more than a showing of dire financial straits because the debtor must show that circumstances out of her control have resulted in a "total incapacity" to repay the debt now and in the future. (quoting *Gerhardt*, 348 F.3d at 92). Moreover, the court observed that such situations are so rare that "in fifteen years on the bench, the undersigned judge has never discharged a student loan over the objection of the lender." Having concluded that Ms. Thomas could not satisfy the second *Brunner* prong, the court did not reach a conclusion regarding the third prong.

Ms. Thomas appealed the bankruptcy court's decision to the federal district court, which affirmed essentially for the reasons stated by the bankruptcy court. Despite ruling that her student loans were non-dischargeable, both courts indicated sympathy for Ms. Thomas and their discomfort with the demanding nature of the *Brunner/Gerhardt* test. Ms. Thomas has appealed to this court.

### III. Discussion

This court "review[s] the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *In re Gerhardt*, 348 F.3d at 91 (citation omitted). Consequently, the "bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo." *Id.* (citation omitted). An undue hardship

determination under *Gerhardt* poses a question of law and is reviewed de novo. *Id.* (citations omitted).

Ms. Thomas principally contends that the *Brunner/Gerhardt* test is inconsistent with the plain meaning of the term "undue hardship" in § 523(a)(8) and urges this court to adopt a "totality of the circumstances" test instead. As she concedes, this court is bound by *Gerhardt* until an en banc panel of this court or the Supreme Court opts to alter our interpretation of § 523(a)(8). And despite Ms. Thomas's challenges to its framework, the *Brunner* test reflects the majority view of this discharge-limiting provision among the circuit courts. *Compare In re Faish*, 72 F.3d 298 (3d Cir. 1995); *In re Frushour*, 433 F.3d 393 (4th Cir. 2005); *In re Oyler*, 397 F.3d 382 (6th Cir. 2005); *In re Roberson*, 999 F.2d 1132 (7th Cir. 1993); *In re Pena*, 155 F.3d 1108 (9th Cir. 1998); *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302 (10th Cir. 2004); *In re Cox*, 338 F.3d 1238 (11th Cir. 2003) (all adopting the *Brunner* test), *with Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003) (holding that the statutory language of § 523(a)(8) contains "inherent discretion" and that "fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy").

The government does not challenge the bankruptcy court's finding that Ms. Thomas satisfied the first prong of the *Brunner* test because she cannot maintain a minimal living standard if forced to repay the student loans. We accept that finding for present purposes. Nor need we opine, despite the government's urging, on the third *Brunner* prong, which evaluates Ms. Thomas's good faith efforts to repay the loan.[2] Thus, the controlling

---

[2] The government's position is based on various avenues by which a student loan debtor may seek reduction of payments, modifications of the terms, and in some instances outright cancellation of all or part of the debts. Ms. Thomas availed herself of none of these

inquiry here is whether Ms. Thomas demonstrated that due to external circumstances beyond her control, *i.e.*, her deteriorating diabetic conditions and the costs associated with it, she is unable to maintain employment and is unlikely to ever be able to repay the debt.    Phrased in terms of *Brunner*/*Gerhardt*, the question is whether because of external factors, her present inability to pay her student loans and maintain a minimal standard of living will persist throughout a significant portion of the loan repayment period.

The answer to this question must be negative.  Ms. Thomas's argument that she meets the second *Brunner* prong is contradicted by the record. Foremost, she is, by her own admission, capable of employment in sedentary work environments.  Second, her actual employment experience demonstrates that after losing the call center job, she was hired by three different employers, although she quit when they were unable to accommodate her need to remain sedentary for periods of time during her shifts.  Finally, she lost her job at the call center not because of physical problems beyond her control but for a violation of company policies.

In sum, there is no evidence that Ms. Thomas's present circumstances, difficult as they are, are likely to persist throughout a significant portion of the loans' repayment period.  Under the standard adopted by this court and the vast majority of other circuit courts, Ms. Thomas is not eligible for a discharge of her student loans.

### IV. Critiques of *Brunner* and *Gerhardt*

Although the lower courts' decision must be affirmed in light of our governing authority, Ms. Thomas, along with an amicus, expends much of her

---

alternatives.  The lower courts, however, did not make findings or conclusions based on this prong of the *Brunner/Gerhardt* test.

briefing on an extended critique of *Brunner/Gerhardt* and a plea that these decisions be reevaluated. She argues that *Brunner* is no longer good law because the court failed to engage in the close textual analysis that, accurately conducted, would have substantially ameliorated the debtor's burden to show "undue hardship." Ms. Thomas further argues that *Brunner*, if good law at all, should only be applied to "unsympathetic" student loan default debtors. Finally, Ms. Thomas contends that from a practical and policy standpoint, *Brunner* no longer suits the times.

These critiques are unconvincing in view of both the text of § 523(a)(8) and the context in which the provision was created and amended. Congress has amended federal bankruptcy law on several occasions, increasing the threshold for student loan discharges each time, before finally settling on an "undue hardship" standard. Before 1976, student loans were easily dischargeable. Abuses of the readily available discharge occurred. That year, Congress passed amendments to the Higher Education Act of 1965 requiring student loans to have been in repayment status for at least five years before they could be discharged, unless the debtor could show that repayment would cause undue hardship. Pub. L. 94-482 (Oct. 12, 1976). Section 523(a)(8) was formally created two years later and incorporated essentially the same terms contained in the Education Amendments of 1976. Pub. L. 95-598 (Nov. 6, 1978). *See, e.g., In re Pelkowski*, 990 F.2d 737, 742–43 (3d Cir. 1993) ("It is undisputed that section 523(a)(8) was enacted in response to the belief that students were taking advantage of the loan program," and the provision's passage "focused on the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors").

In 1990, Congress changed the law again, extending the required repayment period from five years to seven years prior to discharge and

No. 18-11091

eliminating the dischargeability of government service scholarships by students who failed to meet their obligations.[3] Pub. L. 101-647 (Nov. 29, 1990). Finally, in response to the growing trend of commercial lending, Congress amended the Bankruptcy Code yet again in 2005 to make qualified private student loans harder to discharge, prohibiting discharge in all cases, unless repayment would create "undue hardship" for the debtor. Pub. L. 109-8 (April 20, 2005). Section 523(a)(8) as it stands today excepts virtually all student loans from discharge unless requiring repayment would "impose an undue hardship on the debtor and the debtor's dependents . . . ." Congress's series of amendments clearly evinces an intent to limit bankruptcy's use as a means of offloading student loan debt except in the most compelling circumstances.

This trend is captured in the plain text of § 523(a)(8). When interpreting statutes, "[w]ords are to be understood in their everyday meanings—unless the context indicates that they bear a technical sense." SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 69 (2012). The Oxford English Dictionary defines "undue" as "going beyond what is appropriate, warranted, or natural" or "excessive." *Undue*, Oxford English Dictionary (OED) (3d ed., Mar. 2014). "Hardship" is defined as "a state of want or privation." *Hardship*, OED (3d ed., Mar. 2014). The plain meaning of the words chosen by Congress is that student loans are not to be discharged unless requiring repayment would impose intolerable difficulties on the debtor. The threshold by definition must be greater than the ordinary circumstances that

---

[3] That amendment came on the heels of litigation in the Eighth Circuit in which a medical student accepted a government scholarship from the Physician Shortage Area Scholarship Program on the condition that he work in an underserved area after graduation. The student did not comply with the conditions of the scholarship after he graduated, and when the government sought to recoup the money, the student filed for bankruptcy. *U.S. Dep't Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986).

might force one to seek bankruptcy relief.[4]  As the *Freshour* court explained, "Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship.  The exception would swallow the rule, and Congress's restriction would be meaningless."  *In re Freshour,* 433 F.3d at 399. This is the genesis of the *Brunner*/*Gerhardt* standard, which inquires whether requiring a debtor to repay a student loan is likely to prevent the debtor from maintaining a minimal standard of living over the course of the repayment period despite good faith efforts to fulfill her obligations.

Ms. Thomas attempts a false analogy between the term "undue hardship" as used to cabin discharges of student loans and the same term as applied to court approvals of voluntary reaffirmation agreements for individual debts by pro se debtors.  *See* 11 U.S.C. § 524(c)(6)(A) (a court may approve such agreements only if "in the best interest of the debtor" and the agreement will not impose "undue hardship").  The student loan provision places the burden on the debtor to show undue hardship, while the latter provision requires close supervision by the bankruptcy court to protect the debtor as a pro se litigant

---

[4] Indeed, the general test for seeking bankruptcy relief is simply a person's inability generally to pay his debts as they come due. *See generally* 2 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 109.09 (16th 2019).  A debtor's good faith in seeking relief is a premise of the powerful relief that bankruptcy offers—the opportunity of a fresh start enforced by an injunction barring creditors' collection efforts. *See In re Little Creek Dev. Co.,* 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.") (citations omitted). *See also Harris v. Viegelahn*, 135 S. Ct. 1829, 1838 (2015) (noting that conversions from Chapter 13 bankruptcy proceedings to Chapter 7 proceedings must be initiated in good faith).  But such inability, coupled with good faith, does not require a bankruptcy court to find the debtor suffers from "undue hardship" as a prerequisite to filing.

from herself or from wheedling creditors. Taken in context, the terms are not inconsistent.

No doubt because so many student loans are ultimately backed by the taxpayers, Congress intended to make student loan debt harder to discharge than other types of consumer debt, and the courts' adoption of a linguistically accurate and demanding standard fulfills that intent. The consequence of the *Brunner/Gerhardt* test is that sympathetic debtors like Ms. Thomas are held to the same standard as debtors who are less sympathetic. But that is an outcome for Congress to address, should it desire. The text of § 523(a)(8) draws no distinction between debtors perceived as sympathetic or unsympathetic. It is undoubtedly true that each case of claimed "undue hardship" must be examined on its own facts, but reducing the *Brunner/Gerhardt* test to a nebulous "totality of the circumstances" standard risks creating intolerable inconsistency of results. The proposed weaker standard would inevitably judicially expand an area of bankruptcy law that Congress has unambiguously sought to constrict.

We also reject Ms. Thomas's description of the present state of the law as "time-clad," that is, rendered obsolete by intervening events. Such events, she contends, include Congress's strengthening of collection remedies against student loan debtors to include measures like garnishment and interception of tax refunds, and the ever-increasing amount of student loan debt amassed in recent years. Of course, as the government observes, enhanced collection remedies are rendered useless if the circumstances affording bankruptcy discharge of student loans are broadened. And the fact that student loans are now mountainous in quantity poses systemic issues far beyond the capacity or authority of courts, which can only interpret the written law. Moreover, that Congress understands § 523(a)(8) to proscribe student loan discharges in all but the most severe circumstances is evidenced by proposed amendments

No. 18-11091

submitted in 2015, 2017, and 2019 that seek "to make student loans dischargeable." *See* H.R. 449 (Jan. 21, 2015); H.R. 2366 (May 4, 2017); H.R. 770 (Jan. 24, 2019). Ultimate policy issues raised by Ms. Thomas and the amicus are for Congress, not the courts.

For these reasons, the *Brunner* standard articulated by the Second Circuit and adopted by this court in *Gerhardt* and by the majority of other courts of appeals is supported by the plain meaning of § 523(a)(8) and bolstered by the context in which this provision arose. Policy-based arguments do not change this interpretation; the role of this court is to interpret the laws passed by Congress, not to set bankruptcy policy.

## V. Conclusion

The judgments of the bankruptcy court and the district court denying discharge are **AFFIRMED**.