# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2022

Lyle W. Cayce
Clerk

No. 20-10821

United States of America,

*Plaintiff—Appellee*,

*versus*

John Paul Cooper,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CR-60-2

Before Dennis, Elrod, and Duncan, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

This case arises out of a health care fraud prosecution. John Paul Cooper and others purportedly schemed to defraud TRICARE, a federal health care program, out of millions of dollars. The jury reached a partial verdict as to Cooper and convicted him of one count of conspiracy to commit health care fraud, one count of receiving an illegal kickback payment, and six counts of making illegal kickback payments. The district court sentenced Cooper to a total of 240 months' imprisonment. Cooper now appeals those convictions on various grounds. Because there was insufficient evidence to support his convictions for paying illegal kickbacks, we REVERSE in part

No. 20-10821

and REMAND for resentencing. We AFFIRM Cooper's convictions for conspiracy to commit health care fraud and receiving an illegal kickback payment.

I.

John Paul Cooper and Richard Cesario co-owned a marketing company called CMGRX. Through the company, the pair schemed to defraud TRICARE, a federal health care program. The scheme was organized as follows: CMGRX hired recruiters who contacted TRICARE beneficiaries and induced them to sign up for creams and vitamins—experimental compounded drugs—to treat scars and pain, claiming that the beneficiaries would be participating in a study of these substances. The recruiters promised the beneficiaries $250 per prescription. Once beneficiaries signed up, CMGRX would send pre-filled prescription forms to various doctors for signing and would pay the doctors for each prescription signed. CMGRX would then send the signed prescriptions to various pharmacies.

Upon receiving the prescriptions, the pharmacies would fill them, bill TRICARE, and send a portion of the proceeds they received from TRICARE back to CMGRX. Once beneficiaries received the compounded creams or vitamins and sent a completed questionnaire about the product to CMGRX, CMGRX would send the questionnaire to a nonprofit charity created by Cooper and Cesario. The charity would then pay the participants the promised $250, using money supplied by CMGRX.

In other words, CMGRX paid TRICARE beneficiaries to order certain substances. CMGRX paid doctors to prescribe the substances to the beneficiaries. TRICARE paid the pharmacies that provided the substances, and the pharmacies paid a portion of those funds to CMGRX. So, everyone involved in the scheme received money, except for TRICARE, who paid.

No. 20-10821

And Cooper was intimately involved throughout the entire scheme. Among other things, Cooper: (1) helped recruit doctors, employees, and pharmacies; (2) negotiated the amount of funds pharmacies would kick back to CMGRX; (3) calculated the amount CMGRX would pay beneficiaries and doctors; (4) helped fund the nonprofit entity and control who it paid; (5) oversaw prescription formulas to help maximize CMGRX revenue; and (6) shared in CMGRX profits.

By May of 2015, TRICARE stopped reimbursing the pharmacies for filling the compounded drug prescriptions because it was losing too much money. CMGRX stopped operating and all money was taken out of the company. Early the next year Cooper and Cesario were arrested. A grand jury indicted Cooper, Cesario, and several others in a 40-count indictment. Cooper was charged on several of the counts: Count 1 for conspiring to commit health care fraud; Counts 16, 18–20, and 22–23 for receiving illegal kickbacks; and Counts 27–30 and 35–40 for paying illegal kickbacks. Most of the co-defendants pleaded guilty, but Cooper went to trial.

The jury reached a partial verdict as to Cooper. It convicted him on Count 1 for conspiring to commit health care fraud, Count 18 for receiving illegal kickbacks from a pharmacy called Dandy Drug, and Counts 35–40 for paying illegal kickbacks to TRICARE beneficiaries. The district court sentenced Cooper to a total of 240 months' imprisonment. Cooper appealed to this court, raising various challenges to his convictions based on statutory construction, sufficiency of the evidence, statements the district court made to the jury, and constitutional considerations.

## II.

Cooper challenges his convictions under Counts 35–40 for paying illegal kickbacks to TRICARE beneficiaries. He argues that even if he could be tried under Counts 35–40, his convictions for those counts are not

supported by sufficient evidence.  We review *de novo* a defendant's properly preserved sufficiency-of-the-evidence challenge.  *United States v. Daniels*, 930 F.3d 393, 402 (5th Cir. 2019).  "The sufficiency challenge requires determining what conduct constitutes an offense," which is a statutory interpretation question we also review *de novo*. *United States v. Williams*, 602 F.3d 313, 315 (5th Cir. 2010).  "In reviewing sufficiency of the evidence we view the evidence and all inferences to be drawn from it in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005) (quoting *United States v. Posada–Rios*, 158 F.3d 832, 855 (5th Cir. 1998)).

Cooper claims that the government failed to meet its burden in showing that he paid TRICARE beneficiaries to induce them to "refer" individuals to doctors and pharmacies for products to be paid by TRICARE. Essentially, Cooper's view is that the evidence was insufficient to convict him of paying to induce "refer[rals]" under 42 U.S.C. § 1320a-7b(b)(2)(A)—the statutory provision on which the district court instructed the jury.  The government counters that the payments Cooper made to TRICARE beneficiaries were to induce them to *refer themselves* to doctors and pharmacies, so the referral element of the provision is satisfied.  We agree with Cooper.

Section 1320a-7b(b)(2)(A) designates as a felony when anyone "knowingly and willfully offers or pays any remuneration . . . to any person to induce such person . . . to *refer* an individual to a person" for the acquisition of an item paid for by a federal health care program.  42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).  The jury instructions given by the district court for Counts 35–40 mirrored this provision.  The parties also agree that the language in the jury charge controls.  In its brief, the government asserted that "the relevant sufficiency question is whether the jury's verdict—*based*

*on the court's instructions*—is supported" (emphasis added), and Cooper readily agreed with that approach in his reply brief.

While the statute does not define the word "refer," "[w]hen interpreting statutes, '[w]ords are to be understood in their everyday meanings—unless the context indicates that they bear a technical sense.'" *Thomas v. Dep't of Educ. (In re Thomas)*, 931 F.3d 449, 454 (5th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012)). Given the medical context of the applicable anti-kickback provisions, the word "refer" should be given a technical meaning. *See United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015) (discussing different meanings of the word "referral" and applying "[t]h[e] more expansive definition of 'referral,' [which] is frequently used in the medical context"). This broad definition of refer "includes not only a doctor's recommendation of a provider, but also a doctor's *authorization* of care by a particular provider." *Id.* at 612. As the Seventh Circuit has explained, the referrer typically serves a gatekeeping role, facilitating or approving a "patient's choice of provider." *Stop Ill. Health Care Fraud, LLC v. Sayeed*, 957 F.3d 743, 749 (7th Cir. 2020).

The question here is whether the statute's use of the term "refer," when given its technical meaning, covers what Cooper paid the TRICARE beneficiaries to do—obtain a product for their own use. We hold that it does not.

Start with the text. The plain text of the statute specifies that when a person pays "any *person* to induce such *person*" to "refer *an individual* to a person" to, say, order a prescription from that person, he commits a felony. 42 U.S.C. § 1320a-7b(b)(2)(A) (emphases added). That crowded sentence can be broken down like this: when A pays B to induce B to refer C to order a prescription from D, A commits a felony. The government, by contrast,

says that B and C can be the same, such that A commits a felony when he pays B to induce B to self-refer B to order a prescription from D. That reading makes little sense on its own; without any legislative instructions to the contrary, the straightforward takeaway is that the "person" being paid and the "individual" whom the paid person refers are different people. We have said as much previously when we held that § 1320a-7b(b)(2)(A) "criminalizes the payment of any funds or benefits designed to encourage an individual to refer *another party* to a Medicare provider for services to be paid for by the Medicare program." *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004) (emphasis added); *see also United States v. Ricard*, 922 F.3d 639, 647 (5th Cir. 2019); *United States v. Martinez*, 921 F.3d 452, 466–67 (5th Cir. 2019). Thus, our decisions provide a straightforward and consistent explanation of this provision as applying to instances in which the defendant pays someone to induce that person to refer someone *else* to a health care good or service.

That is not to say that what Cooper did was not a felony, it just was not *this* felony. The very next subsection criminalizes inducing someone to "purchase" or "order" a substance "for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2)(B). In other words, under subpart (B), A commits a felony when he induces B to buy something from D. What Cooper did might fall under subpart (B), not subpart (A); but the government nevertheless invites us to read them the same. We decline the invitation, as doing so would collapse the distinction drawn by Congress between the two subparts. *See United States v. Ceasar*, 30 F.4th 497, 502 (5th Cir. 2022) ("We will not read one part of [a subsection] in a way that renders another part of that same subsection essentially ineffective."); *see also* Scalia & Garner, *supra* at 174 ("[No word or provision] should needlessly be given an interpretation that causes it to duplicate another provision.").

It is true that the term "refer[ral]" may at times include "self-referrals." For instance, in another context, Congress targeted self-referrals of another kind: the practice of physicians referring individuals to medical providers in which the physician has a financial interest. *See* 42 U.S.C. § 1395nn(a)(1); *United States v. Cath. Health Initiatives*, 312 F. Supp. 3d 584, 589 n.1 (S.D. Tex. 2018) (describing that practice as "self-referr[ing]" despite the statute not using that term specifically); *see also Self-referral*, Oxford English Dictionary (3d ed. 2018) (describing that practice in the second listed definition of "self-referral"). That section uses the term "referral" to mean "self-referral," but unlike the statute here, it expressly defines "referral" to give it such a meaning. 42 U.S.C. § 1395nn(h)(5). So we know that Congress knows how to target self-referrals—indeed, for the sorts of self-referrals which the government envisions, Congress likely did so in subpart (B) within this very section, 42 U.S.C. § 1320a-7b(b)(2)(B). It just did not do the same in subpart (A). *Cf. United States v. Lauderdale County*, 914 F.3d 960, 965 (5th Cir. 2019).

At best, it is ambiguous whether subpart (A)'s use of the term "refer" covers self-referrals. To the extent that is true, the rule of lenity would nevertheless break the tie in Cooper's favor. *United States v. Kaluza*, 780 F.3d 647, 669 (5th Cir. 2015) (explaining that "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them" (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008))). As a result, even if the statute was ambiguous, we would construe it in Cooper's favor to cover referrals of *another* person, not self-referrals.

Thus, Cooper may be properly convicted under § 1320a-7b(b)(2)(A) if he paid an individual to induce that individual to refer another person to a health care item or service. The individuals identified in Counts 35–40 were paid to sign up for experimental compounded drugs and complete a questionnaire based on their experience. The record indicates that, once the

No. 20-10821

beneficiaries were signed up for the "study," a doctor would issue a prescription, the prescription would be sent by the doctor directly to CMGRX, and then CMGRX would determine which pharmacies would fill the prescriptions. The TRICARE beneficiaries never obtained the prescriptions nor even knew which pharmacy would fill them. And, critically, the beneficiaries never had any power or control to "refer" anyone else in any way at all. The payments Cooper facilitated to the beneficiaries were to induce them to use a product, not to induce them to refer someone else to do so.[1]

Because we hold that there was insufficient evidentiary support for Cooper's convictions on Counts 35–40, we reverse those convictions and remand for resentencing.[2]

### III.

Cooper raises various arguments in support of reversing his other convictions. We reject each of them.

### A.

Cooper challenges his conviction under Count 1 of the indictment for conspiracy to commit health care fraud. He argues that his conspiracy

---

[1] As the opinion concurring in the judgment observes, Cooper could not be convicted under subsection (A) even if that provision did cover the act of referring oneself. If that subsection covers such self-referrals, it does so for inducing someone to refer themselves to another *person* for medical services or items. But Cooper at most paid TRICARE beneficiaries to induce them to refer themselves to a *substance* and not to a person. "Alternative holdings are not dicta and are binding in this circuit." *Jaco v. Garland*, 24 F.4th 395, 406 n.5 (5th Cir. 2021).

[2] Cooper also argues that the district court's jury instructions constructively amended the indictment, constituting reversible error on his convictions under Counts 35–40. We decline to address this argument because we reverse those convictions on other grounds.

conviction was predicated on his violation of the illegal kickback provisions and therefore must be reversed if any of his convictions for violating the kickback offenses are legally flawed. We disagree. Cooper's conviction for conspiracy to commit health care fraud can stand even though we reverse his convictions for paying illegal kickbacks under Counts 35–40.

Count 1, charging Cooper with conspiracy to commit health care fraud, alleged that Cooper and certain co-defendants

> did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, known and unknown to the grand jury, to violate 18 U.S.C. § 1327, that is, to devise and to execute a scheme and artifice (i) to defraud . . . TRICARE and (ii) to obtain [by false pretenses] money and property owned by . . . TRICARE.

Sections 1347 and 1349 reflect the text of the indictment, and so did the jury instructions. The kickback statutes were never expressly mentioned in Count 1, so there is no reason to believe the conspiracy conviction was in any way dependent on proper convictions under those provisions. It is true that Count 1, when describing the nature of the conspiracy to commit health care fraud, explained the facts of the illegal kickback scheme. But the fact that the conspiracy was directed towards carrying out a kickback scheme does not mean that the government had to prove Cooper violated other statutory provisions criminalizing such kickbacks to prove the conspiracy. As the indictment, statute, and jury instructions demonstrate, the government simply had to prove the agreement to defraud TRICARE.

We therefore affirm Cooper's Count 1 conviction for conspiracy to commit health care fraud.

## B.

Cooper also challenges his conviction under Count 18 of the indictment. In that count, he was charged and convicted for receiving illegal

kickbacks under 42 U.S.C. § 1320a-7b(b)(1).  That subsection provides that "[w]hoever knowingly and willfully solicits or receives any remuneration . . . (A) in return for referring an individual to *a person* for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony."  42 U.S.C. § 1320a-7b(b)(1) (emphasis added).  Cooper argues that because Count 18 alleged that he solicited and received payment from "Dandy," an LLC pharmacy, he did not receive a kickback from "a person" as § 1320a-7b(b)(1) requires.  The government responds that LLCs fall under the definition of "person" as used in that provision.  We agree with the government.

Cooper did not raise this argument at the district court, so we review for plain error.  *See United States v. Haggerty*, 997 F.3d 292, 296–97 (5th Cir. 2021).  Thus, Cooper must show (1) an error (2) that is "clear or obvious, rather than subject to reasonable dispute," (3) that affected his "substantial rights," and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

An LLC is a person for the purposes of the anti-kickback statute.  For this portion of the U.S. Code, "[t]he term 'person' means an individual, a trust or estate, a partnership, or a corporation."  42 U.S.C. § 1301(a)(3).  The statutory definition thus does not expressly enumerate LLCs.  But LLCs did not exist in 1972 when the kickback provision was enacted.  *See Shook v. Walden*, 368 S.W.3d 604, 613 n.10 (Tex. App.—Austin 2012, *pet. denied*).  An LLC shares features of both partnerships and corporations.  *See United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008); *McNamee v. Dep't of the Treasury*, 488 F.3d 100, 107 (2d Cir. 2007).  And "person" includes both of those entities.  We decline to read the statute to cover corporations and

partnerships but not novel business organizations that in substance are a combination of those two types of entities.

Relatedly, the term "corporation" "includes associations, joint-stock companies, and insurance companies." 42 U.S.C. § 1301(a)(4). By using broad terms like "associations" and "companies," the provision contemplates a broad understanding of "corporation." Cooper argues that LLCs are not "associations" because unlike associations, LLCs have a legal identity separate from their members. But corporations also have a legal identity separate from their members, yet the statute states that "corporation" includes "associations." It thus appears that "corporation" as used here is broader than modern technical definitions of that term. The Regulations back up this notion. They explain that the kickback statute covers payments from "individuals or *entities* . . . ." 81 Fed. Reg. 88368, 88369 (Dec. 7, 2016) (emphasis added). Thus, the best reading of "person" in § 1320a-7b(b)(1)(A) is that it covers all individuals and all business entities like partnerships and corporations.

To the same end, at the time the statute was passed, Black's Law Dictionary gave a broad definition of "corporation." It explained that the distinctive features of a corporation are that it is created under legal authority and exists independent of the members that make it up. *Corporation*, Black's Law Dictionary (4th ed. 1968). And the examples of corporations provided by § 1301(a)(4) do not limit that conception of the term. If anything, that provision expands "corporation" because it expressly lists specific types of entities that otherwise might not be included (like associations).

In sum, "person" in § 1320a-7b(b)(1)(A) includes corporations and partnerships. At the time of enactment, LLCs did not exist, but "corporation" was a broad enough term to encompass them. So, when Cooper was charged with receiving an illegal kickback from Dandy, an LLC,

No. 20-10821

he was charged with a federal offense under § 1320a-7b(b)(1). We affirm his conviction on Count 18.[3]

## C.

Cooper next argues that the district court erred when answering questions the jury sent during its deliberations. In Cooper's view, the court's responses influenced the jury to return guilty verdicts on charges for remuneration offenses based on payments to doctors. The government responds that the court gave a reasonable and accurate response to the questions and thus did not abuse its discretion. Of course, to the extent that the jury's questions related to Counts 35–40, we have no need to address the issue because we reverse those convictions on other grounds. But to the extent the jury's questions related to other offenses for which Cooper was convicted, we hold that the district court did not abuse its discretion.

---

[3] Cooper also argues that his convictions for both the conspiracy to commit health care fraud (Count 1) and the kickback offenses (Count 18 and Counts 35–40) violate his right against double jeopardy. First, because we reverse his convictions under Counts 35–40, we need not address whether those convictions in tandem with the conspiracy conviction give rise to double jeopardy concerns.

In any event, we disagree that Cooper was subjected to double jeopardy for being convicted for both Count 1 and Count 18. To determine whether two related offenses are "the same offense" for double jeopardy purposes, courts ask "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). We have held that under that test, "the offenses of conspiracy to commit a crime and the crime itself are separate offenses." *United States v. Kalish*, 734 F.2d 194, 198 (5th Cir. 1984). That principle certainly holds true in this case. The conspiracy charge and the substantive kickback offense each require proof of a fact which the other does not: The conspiracy charge requires an agreement, and the substantive offense does not; the substantive kickback offense requires proof of specific payment made for specific purposes, whereas the conspiracy offense only requires an agreement with the intent to defraud a federal health care program in some manner. *See* 42 U.S.C. § 1320a-7b(b)(1); 18 U.S.C. §§ 1347, 1349.

No. 20-10821

During its deliberations, the jury sent multiple notes to the court seeking clarification on one general question: whether a prescription from a doctor sent to a pharmacy could constitute a "referral." After conferring with counsel, and over Cooper's objection, the court responded that such an example "could" constitute a patient referral, and it noted that the jury should "[r]emember to pay attention to all of my instructions, including all of the elements of each count and all of the evidence in the case." Days later, the jury sent another note to the court reading: "There's a question as to the use of 'could' in your answer. Does this mean that each of the examples given could also not be a referral?" The court conferred with counsel again and, over objections from Cooper and the government, responded to the jury: "Whether or not something is a referral is for you to determine based on the facts and the instructions I have given you."

Cooper argues that the judge should have responded that the scenarios the jury described in its questions "could also not" be referrals. We disagree. Judges' responses to jury inquiries are reviewed for abuse of discretion. *United States v. Jordan*, 851 F.3d 393, 398 (5th Cir. 2017). The district court did not abuse its discretion, or even err. First, Cooper has not shown that the scenarios described in the jury's questions could never be referrals, so the judge's initial response that they "could" be referrals was factually and legally correct. Second, by using the term "could," the district court did not go near as far as to say that referrals were made in this case. The court left that issue open for the jury to decide, and specifically instructed the jury that it was tasked with making that decision based on the evidence and the instructions already provided. It did not err by doing so.

### D.

Finally, we address Cooper's argument that the government did not comply with the provisions of 18 U.S.C. § 983 when it seized his assets under

No. 20-10821

a civil forfeiture order. The government contends that Cooper expressly waived all challenges to the asset forfeiture and that, in any event, Cooper cannot satisfy plain error because it is not clear that the government failed to comply with the applicable statutory provisions.

We hold that Cooper has waived this issue. After the jury convicted Cooper, he and the government entered a stipulation agreement regarding asset forfeiture in which he agreed to forfeit various real and personal property and funds in exchange for the government agreeing not to pursue forfeiture of certain other assets. In the document, Cooper specifically "waive[d] any rights to contest the forfeiture or litigate further against the United States his interest in the Forfeited Property . . . . [And he] also waive[d] any and all rights—constitutional, statutory, or otherwise—with respect to the forfeiture."

If a party intentionally relinquishes a known right, he has waived that right and generally cannot reassert it later. *See United States v. Olano*, 507 U.S. 725, 733 (1993). Through the stipulation agreement, Cooper expressly relinquished his right to challenge the government's seizure of his forfeited assets, so he cannot do so now.

## IV.

Therefore, we REVERSE Cooper's convictions on Counts 35–40 for paying illegal kickbacks and REMAND for resentencing. We AFFIRM Cooper's convictions on Count 1 for conspiracy to commit health care fraud and Count 18 for receiving an illegal kickback payment.

14

No. 20-10821

James L. Dennis, *Circuit Judge*, concurring in part and concurring in the judgment in part:

I concur fully in all but Part II of the majority opinion. As to Part II—concerning Cooper's convictions under counts 35–40 for making illegal payments to TRICARE beneficiaries—I concur in the judgment reversing Cooper's convictions, but for different reasons than the majority. Unlike the majority, it is my view that 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits payments to induce a so-called "self-referral" whereby a patient refers themselves to a health care provider. However, we need not definitively answer this question of statutory interpretation in this case, because the evidence is insufficient to support Cooper's convictions even if we were to give the statute the reading urged by the Government.

Cooper was indicted for violating § 1320a-7b(b)(2) by allegedly paying TRICARE beneficiaries "to induce them to purchase and order prescription compounded drugs" paid for by TRICARE. The statute reads as follows:

> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(2).

The indictment tracked the statutory language of subsection (2)(B), and, at trial, the Government presented ample evidence that Cooper and his co-conspirators paid TRICARE beneficiaries to induce them to purchase and order prescription creams and vitamins. Such evidence included, *inter alia*, testimony from Cooper's co-conspirator Richard Cesario; testimony from Miranda Stevens, an employee of Cooper and Cesario's marketing company, CMGRX; testimony from numerous TRICARE beneficiaries who were recruited by CMGRX to order the prescription drugs and were paid to participate in Cooper's sham "study"; and documentary evidence, including marketing materials and copies of checks. Had the jury charge mirrored the language in the indictment, we would surely affirm Cooper's conviction given the sufficient evidence of guilt.

The jury charge, however, stated the Cooper had made payments "to induce patient referrals to a compound pharmacy," and instructed the jury that it was a crime to make payments "to induce the referral of an individual to a person" for health care services paid for by TRICARE. In other words, the jury charge differed from the indictment because it tracked the language of subsection (2)(A) instead of (2)(B). This erroneous jury instruction was inexplicably requested by both Cooper and the Government. Regardless of why the wrong instruction was given, we evaluate the sufficiency of the evidence based on (2)(A), the statutory provision referenced in the jury charge

On appeal, Cooper argues that the evidence was insufficient because "refer" in (2)(A) does not cover a "self-referral" whereby a person refers *themselves* to a health care provider; the Government urges the opposite view. The majority agrees with Cooper and holds that (2)(A) only applies if one person is paid to refer *another person* to a health care provider. Maj. Op at 5-

6. I disagree with the majority's reading of (2)(A). The statute prohibits making a payment to any person "to induce such person to refer an individual," not "to induce such person to refer *another* individual." Nothing in the statute requires "such person" and "an individual" to be two different people.[4] While it is true that our court in the past has described (2)(A) as "criminaliz[ing] the payment of any funds or benefits designed to encourage an individual to refer *another* party," *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004) (emphasis added), this description is at odds with the text of the statute, and, in any event, is dicta that we are not bound to follow.

The majority is also concerned that giving "refer" the reading urged by the Government "would collapse the distinction drawn by Congress between the two subparts." Maj. Op. at 6-7. This concern is not unreasonable, given that the Government explicitly argues that, in this case at least, any distinction between the two subsections "collapses" such that "there is no perceptible difference" between them. With this argument, the Government overreaches. But, while I share the majority's concern that we give effect to both subsections of the statute, I nonetheless do not think it is necessary to adopt the majority's construction of (2)(A) to do so.

The key distinction drawn by Congress between (2)(A) and (2)(B) is whether referral of an individual or recommendation of a service is the goal of the improper financial inducement. *See United States v. Polin*, 194 F.3d 863, 867 (7th Cir. 1999) ("The subsections refer to the difference between referral of individuals (Subsection A) and the recommendation of specific services (Subsection B)."); *see also United States v. Stewart Clinical Lab'y,*

---

[4] The statutory scheme defines "person" to mean "an individual, a trust or estate, a partnership, or a corporation." 42 U.S.C. § 1301(a)(3).

*Inc.,* 652 F.2d 804, 806-07 (9th Cir. 1981) (construing identical language in an earlier statute and characterizing the "operative distinction between the subsections" as "the nature of the referred . . . individuals or services": "Subsection (A) prohibits payoffs for referring [ ] patients.  Subsection (B) prohibits payoffs for referring [ ] services[.]").  The purpose of § 1320a-7b(b) is to prevent improper payments like bribes and kickbacks from influencing the provision of health care paid for with federal dollars.  *See United States v. Patel*, 778 F.3d 607, 615 (7th Cir. 2015).  The statute recognizes that improper influence is most likely to occur in one of two ways—either by influencing where patients go for services, or by influencing what services patients receive—and the two subsections reflect this understanding of common kickback and bribery schemes.

Contrary to the Government's position, the individuals/services distinction prevents the two subsections from collapsing into each other even if (2)(A) is construed to cover self-referrals.  The offenses in (2)(A) and (2)(B) are not interchangeable, and proof of one does not satisfy the other.  Had the evidence shown that Cooper paid TRICARE beneficiaries to induce them to self-refer to a specific pharmacy, I would hold that his conduct was prohibited by (2)(A) and would affirm his convictions.  But, in this case, the evidence only proved that Cooper paid TRICARE beneficiaries to induce them to purchase or order specific prescription drugs.

The Government tries to salvage its case by arguing that when Cooper paid TRICARE beneficiaries to induce them to sign up to order prescription drugs, he simultaneously induced them to refer themselves to the specific doctors and pharmacies that he conspired with who signed, filled, and mailed those prescriptions to the beneficiaries.  On the surface, the Government's argument is not illogical—after all, the compound creams and vitamins at issue were not over-the-counter drugs, meaning that it was necessary for a doctor to sign a prescription and a pharmacy to fill it in order for the

TRICARE beneficiaries to receive the drugs. But the Government's emphasis on the means of Cooper's scheme does not change the fact that the evidence at trial showed only that Cooper conspired to pay TRICARE beneficiaries to induce them to order prescription drugs. The beneficiaries simply did not refer themselves to the doctors and pharmacies; if anything, Cooper and CMGRX did the referring. That the co-conspirator doctors and pharmacies were involved in effectuating the scheme is irrelevant because their mere participation did not automatically transform the beneficiaries' purchases into self-referrals.

In sum, I would hold that no reasonable jury could conclude based on the evidence at trial that Cooper made payments to induce the self-referral of individuals to doctors and pharmacies. Rather, the evidence only supported the conclusion that Cooper made payments to induce TRICARE beneficiaries to purchase specific services—the compound prescription drugs. For these reasons, although I disagree with the majority's construction of § 1320a-7b(b)(2)(A), I concur in the judgment reversing Cooper's convictions on counts 35-40.